Barbara BOTKIN, Guardian ad Litem for Gay Banes, an Incapacitated Person, Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Gary Antonino, Joel Sherman, and Ted Stavrakis, Appellees.

Superior Court of Pennsylvania.

Submitted May 15, 2006.

Filed Aug. 30, 2006.

Kenneth R. Behrend, Pittsburgh, for appellant.

Marshall J. Tindall, Pittsburgh, for Sherman and Stavrakis, appellees.

Kimberly A. Brown, Pittsburgh and Brian J. Pendleton, Jr., Newark, NJ, for Metropolitan Life, appellee.

BEFORE: ORIE MELVIN, TODD and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Barbara Botkin, guardian *ad litem* for Gay Banes, an incapacitated person, appeals the order granting summary judgment in favor of Appellees Metropolitan Life Insurance Company (hereinafter "MetLife"), Joel Sherman, and Ted Stavrakis on the basis that the trial court erred in: 1) failing to equate answers to interrogatories to deposition testimony; and 2) treating Banes' letters, his daughter/Appellant Botkin's remarks, and his expert's memorandum as hearsay evidence subject to exclusion at trial.[1] We affirm.

The standards which govern summary judgment are well settled. When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion.

*Swords v. Harleysville Ins. Cos.,* 584 Pa. 382, 389–90, 883 A.2d 562, 566–67 (2005) (citation omitted).

---

1. Banes also instituted suit against Gary Antonino (a MetLife supervisor) as a party-defendant, but the case was discontinued against him without objection. *See* Record No. 24.

¶ 2 In light of the preceding, the record establishes the following relevant events. On or about the 26th day of July, 1987, MetLife sales agent Sherman met with Banes to discuss the purchase of MetLife products. Banes informed Sherman that he sought to purchase an annuity and a term life insurance policy, the latter of which was to be funded by the interest earned on the annuity. Sherman indicated that an annuity with a self-sustaining term life insurance policy from the interest generated therefrom could be accomplished. Sherman produced applications which Banes signed believing each to be an annuity and a term life insurance policy, and he paid $100,000.00 to fund the purchases. Banes also paid $962.00 for what he believed was the first year of the term life insurance policy.

¶ 3 In point of fact, the products which Sherman delivered to Banes were a "Life Paid Up at 95 Life Insurance" policy number 872–734–827–A and a "Single Premium Endowment Life Insurance" policy number 872–946–481–UL with a face value of $134,000.00.[2] In order to fund the premium payments on the "Life Paid Up at 95 Life Insurance" policy (constituting $7,750.00 over twelve months from August of 1988 to August of 1989), loans were taken against the accumulated cash value of the "Single Premium Endowment Life Insurance" policy, which Banes alleges were signed either without knowledge of the purpose of the withdrawal or Sherman advised him the loans were necessary to ensure that the estate plan (for financing the term insurance policy) would function as intended. Banes was under the belief, fostered by Sherman, that the interest accruing on the annuity (in contrast to the actual loans being made against the policy) should be funneled through his account and a check issued to MetLife to pay the premiums on the term insurance. This arrangement continued over the next four years (from 1989 until 1992) without any mention by Sherman or MetLife that these funds represented loans against and not interest payments from the policy.

¶ 4 During this same period of time (mid-July of 1989), Banes alleges Sherman represented that dividends from policy number 872–734–872–A could be used to pay the premium on a second policy offered by MetLife. Banes accepted the offer and executed the application for new policy number 892–735–049–A. However, when Sherman completed the paperwork for this new policy, the sales agent indicated on the questionnaire that Banes would not be funding the new policy by either surrendering or borrowing against the value of an existing policy, despite the fact that is what was occurring to fund the purchase. Sherman also secured the old policies, ostensibly to change the beneficiary from Banes' wife (who had died) to his children. However, Sherman merely reissued policy number 872–946–481–UL as policy number 892–946–461–UL without the knowledge or consent of Banes, which resulted in the cash surrender value ($134,000.00) being partially used ($100,000.00) to fund the reissued policy.

¶ 5 Furthermore, in late 1989, Banes contacted Sherman to create a $10,000.00

---

2. Banes believed he was purchasing an annuity in contrast to the universal life insurance policy—the former pays monies over the course of the named beneficiary's life-time, while the latter is a policy under which a single payment to the beneficiary is made. Further, for informational purposes, a MetLife agent makes a 3% first year commission on the sale of an annuity compared to a 50% first year commission on a "Single Premium Endowment Life Insurance" policy. MetLife also pays a lower first year commission on a term life insurance policy, compared to a 55% first year commission on a "Life Paid Up at 95 Life Insurance" policy. *See* Appellant's brief, at 4.

tax free gift for each of his three children in the form of an annuity, and he indicated to the sales agent he did not want to pay into the annuities every year. Sherman assured Banes he could provide such an investment vehicle. Toward that end, Banes executed documents and issued Sherman a $30,000.00 check to fund the three new annuities. Nonetheless, the products Sherman sold were really whole life insurance policies requiring the payment of annual premiums, which demand came to pass when MetLife sent notice in March of 1991 that Banes owed $30,000.00 on the three policies for his children. Banes signed a loan authorization form to withdraw funds from policy number 892–946–461–UL to pay the amount requested, which he believed (mistakenly) was due on the annuities purchased for his children.

¶ 6 In April of 1992, Banes discovered that Sherman's misrepresentations were the genesis for his investment quagmire, and a writ of summons was issued against Appellees MetLife, Sherman, and his manager Ted Stavrakis. A complaint [3] was followed by Appellees' motion for summary judgment, which was granted and a timely appeal ensued raising two issues. The first attributes the trial court with error in failing to equate Banes' answers to interrogatories to deposition evidence "admissible as testimony at trial through the interplay of [Pennsylvania] Rules of Civil Procedure 4005 and 4020[,]" especially given the fact that Banes was diagnosed with dementia after commencement of suit but before he could be deposed, which renders him incapacitated for trial purposes.[4] *See* Appellant's brief, at 15.

¶ 7 We begin our discussion with a review of the interplay between Federal and Pennsylvania Rules of Civil Procedure regarding depositions and discovery. "The Pennsylvania Rules have never been identical with the Federal Rules. [ ... ] [However, m]ore than twenty-five years of experience and the general acceptance of the philosophy of discovery justify bringing the Pennsylvania system into as close conformity as possible with the federal system[, albeit t]he differences between state and federal practice still prevent absolute identity." *See* Pennsylvania Rules of Civil Procedure **(DEPOSITIONS AND DISCOVERY)—Explanatory Comment—1978**, at 374 (Ed.2006).

¶ 8 In Pennsylvania, the procedural rules governing interrogatories begin at Pa.R.C.P. 4005, which states, in relevant part:

(a) Subject to the limitations provided by Rule 4011, any party may serve upon any other party written interrogatories to be answered by the party served [within thirty days after the service of the interrogatories. Pa.R.C.P. 4006(a)(2) ].

\* \* \* \*

(c) *Interrogatories* may relate to any matters which can be inquired into under Rules 4003.1 through 4003.5 inclusive *and the answers may be used to the same extent as provided in Rule*

---

3. Banes amended his complaint twice, and on the second occasion he reserved three counts: 1) common law fraud and deceit; 2) negligence/willful disregard; and 3) breach of contract and the breach of the implied covenant of good faith and fair dealing. *See* Appellant's "Second Amended Complaint in Civil Action," 9/14/01; Record No. 40.

4. Banes' incapacitation was the basis for his daughter Barbara Botkin/Appellant petitioning the court to be named his guardian *ad litem*. See "Motion for the Appointment of a Guardian Ad Litem for an Incapacitated Person Under Pa.R.C.P.2053 and to Amend Caption," 7/5/05; Record No. 55.

*4020 for the use of the deposition of a party.*

Pa.R.C.P. 4005(a), (c) (emphasis added). Transferring our attention to Rule 4020, it states, as herein pertinent:

(a) At trial, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof if required, in accordance with any one of the following provisions:

(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of a deponent as a witness, or as permitted by the Pennsylvania Rules of Evidence.

\* \* \* \*

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds

\* \* \* \*

(c) that the witness is unable to attend or testify because of age, sickness, infirmity or imprisonment [ ... ]

Pa.R.C.P. 4020(a)(1), (3), (c).

¶ 9 Assigning a common sense reading to the language contained within Rule 4020, *see* Statutory Construction Act, 1 Pa.C.S.A. § 1921, the content of a deposition may be used to contradict or impeach the testimony of a deponent witness.

And, in the case of an unavailable deposed witness, a deposition may be used for any purpose, subject to the rules of evidence and Pa.R.C.P. 4016(b).[5] Such perimeters apply with equal force to the use of answers to interrogatories at trial. *See* Pa.R.C.P. 4005(c) (permitting answers to interrogatories to be used "to the same extent as provided in Rule 4020 for the deposition of a party[,]" which admissibility is regulated by the rules of evidence).

¶ 10 Under Pennsylvania's Rules of Evidence, "[h]earsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute."[6] Pa.R.E. 802. As noted earlier, in a civil case, all or part of a deposition may be admitted pursuant to Pa.R.C.P. 4020. *See Comment* to Rule 802.

¶ 11 Initially, we note that the answers to interrogatories are not objectionable hearsay solely because their content cannot be testified to by Banes at trial. It is true, as Appellant cites in her appellate brief at 11, the Third Circuit Court of Appeals interpreted language similar to that appearing in Rule 4005 ("Interrogatories [ ... ] and the answers may be used to the same extent as provided in Rule 4020 for the use of the deposition of a party[, so far as admissible under the rules of evidence,]") to accord answers to interrogatories the status of in-court testimony. *See Treharne v. Callahan,* 426 F.2d 58 (3rd Cir.1970), which stated, in pertinent part:

---

5.  Rule 4016(b) states:

    Objections to the competency of a witness or to the competency, relevancy, or materiality of the testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which was known to the objecting party and which may have

been obviated or removed if made at that time.
Pa.R.C.P. 4016(b).

6.  "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c).

Rule 33 of the Federal Rules of Civil Procedure provides that answers to interrogatories "may be used to the same extent as provided in Rule 26(d) for the use of the deposition of a party. Rule 26(d), in turn, provides that "so far as admissible under the rules of evidence [ ... ] the deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds [*inter alia* ] [ ... ] that the witness is dead." Thus, Rule 26(d) creates an exception to the hearsay rule and accords answers to interrogatories the status of in-court testimony.

*Treharne,* 426 F.2d at 60 (footnote omitted). However, *Treharne* came under attack with revision of the Federal Rules of Civil Procedure and the adoption of the Federal Rules of Evidence. Such events undermined equating answers to interrogatories with in-court testimony.

*Treharne* is obsolete, due to the 1970 and 1975 revisions of the Rules of Civil Procedure and the adoption of the Federal Rules of Evidence. Prior to 1970, Rule 33, Federal Rules of Civil Procedure, provided that answers to interrogatories "may be used to the same extent as provided in Rule 26(d) for the use of the deposition of a party." The 1970 amendments to the Federal Rules, however, repealed this foundation for the *Treharne* analysis, separating interrogatories from the rule under which depositions are admissible. The new rule, which is now in effect, provides, in part, that "the answers may be used to the

extent permitted by the rules of evidence." [7] Rule 33(b), Federal Rules of Civil Procedure.

The advisory committee proposed this change in the admissibility of interrogatory answers because of its conviction that interrogatories were not apposite to depositions due to the absence of cross-examination, stating:

> The use of answers to interrogatories at trial is made subject to the rules of evidence. The provisions governing use of depositions, to which Rule 33 presently refers, are not entirely apposite to answers to interrogatories, since deposition practice will ordinarily participate through cross-examination.

Advisory Committee Note, 48 F.R.D. 487, 524 (1969). As noted by the Virginia Law Review, "[t]he change implicitly overrules *Treharne's* admission of the answers." Note, "Dead Men Tell No Tales: Admissibility of Civil Depositions upon Failure of Cross–Examinations," 65 Va.L.Rev. 153, 167, n. 72 (1979).

The new Rule 33, coupled with the 1975 revision of Rule 43(a) [8] and the enactment of the Federal Rules of Evidence, places the analysis for admissibility of interrogatory answers squarely and exclusively under the Federal Rules of Evidence. The legal and analytical bases of *Treharne* have been repealed.

*Shores v. Sklar,* 1986 WL 9810, 1986 U.S. Dist. LEXIS 22073 (N.D.Ala.1986), appeal granted on other grounds, 885 F.2d 760

---

7. This quoted language now appears in the 2006 version of Rule 33(c); to-wit:

> **(c) Scope; Use at Trial.** Interrogatories may related to any matters which can be inquired into under Rule 26(b)(1), and the answers may be used to the extent permitted by the rules of evidence.

Federal Rules of Civil Procedure, Rule 33(c).

8. The 2006 version of Rule 43(a) reads, as herein relevant:

> **(a) Form.** In every trial, the testimony of witnesses shall be taken in open court, unless a federal law, these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court provide otherwise. [ ... ].

Federal Rules of Civil Procedure, Rule 43(a).

(11th Cir.1989), *cert. denied,* 493 U.S. 1045, 110 S.Ct. 843, 107 L.Ed.2d 838 (1990).

■ ¶ 12 With the preceding in mind, and allowing for the same rule restrictions to apply to the use of answers to interrogatories as exist for depositions recited in Rule 4016(b) (competency, relevancy, or materiality of the testimony sought to be introduced at trial), Banes' responses to Appellees' interrogatories are repetitive in nature and generic in content. For example, Appellees posed at Interrogatory No. 53 the following inquiry:

53. Please set forth all facts upon which you base your allegations contained within the Amended Complaint ¶ 30 that:

"On or about July 26, 1987, [Appellee] Sherman met with [Banes] at his residence to discuss the purchase of [Appellee] Metropolitan products."

Appellant responded:

See [Banes'] Amended Complaint. Discovery is continuing. (At this time, there are no additional facts/evidence other than the allegations in the Complaint, answers to interrogatories, documents provided by any party in discovery, and testimony given in any deposition taken in this case.)

*See* Appellant's Exhibit 6 attached to "[Appellant's] Response and Brief to [Appellees'] Motion for Summary Judgment," 10/3/05, ¶ 53; Record No. 75. Save for Interrogatories Nos. 4–6, which indicated in answer "None at this time," the same answer reproduced at Interrogatory No. 53 above was replicated in all of Appellees'

interrogatories. *See Id.,* ¶¶ 54–109. Such answers are of little or no value, especially since none illuminates Appellant's fraud and breach of contract claims to establish a genuine issue of material fact. *See* Appellant's "Second Amended Complaint in Civil Action," 9/14/01; Record No. 40; *Stidham v. Millvale Sportsmen's Club,* 421 Pa.Super. 548, 618 A.2d 945, 950 (1992) (the principles governing summary judgment require that the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, must demonstrate that there exists no genuine triable issue of fact). Appellant cannot rest upon mere allegations in the pleadings, which appears to be the case given the paucity of information in the answers to interrogatories. "Bold unsupported assertions cannot create genuine issues of material fact" sufficient to overcome the grant of a motion for summary judgment. *McCain v. Pennbank,* 379 Pa.Super. 313, 549 A.2d 1311, 1313–14 (1988).

■ ¶ 13 Furthermore, Appellant's answers to interrogatories, at least those made a part of the official record,[9] contain no verification. *See* Pa.R.C.P. 4006(2) ("The answers [to interrogatories] shall be signed by the person making them [ ... ]."). The Rules of Civil Procedure allow for verification to be by oath or affirmation before a notary or a statement by a signer that it is made subject to the penalties of 18 Pa.C.S.A. § 4904, relating to unsworn falsification to authorities. *See* Rule 4006 (**Explanatory Comment—**

---

9. We are not privy to all the answers and/or interrogatories preceding number 53 (save for Interrogatories Nos. 4–6, *see* Exhibit "A" attached to Appellee MetLife's "Motion to Strike Certain of [Appellant's] Proposed Trial Witness," 10/24/05; Record No. 78) or following number 109 to ascertain whether Appellant's responses differ in content or style from those made part of the official record. We

need not speculate upon their existence or content because the responsibility of providing a complete record is upon Appellant, and any negative consequences flowing therefrom is shouldered by Appellant. *Smith v. Smith,* 431 Pa.Super. 588, 637 A.2d 622 (1993), *allocatur denied,* 539 Pa. 680, 652 A.2d 1325 (1994).

1981). The absence of such verification leaves in doubt whether the answers were predicated upon personal knowledge or were inadmissible hearsay.[10] *Treharne*, 426 F.2d at 61 ("The oath attached to the answers recites that the facts in the answers [to interrogatories] 'are true and correct to the best of [decedent's] knowledge, information and belief.' We agree that the language of the oath, without more, leaves in doubt whether the answers were based on personal knowledge or were inadmissible hearsay.").

¶ 14 As such, absent verification and a lack of substance in the answers to interrogatories create no dispute as to a material issue of fact in assessing the merits of granting Appellees' motion for summary judgment. *See* Rule 4006(2); *Swords; Stidham, supra.* Appellant's argument to the contrary is meritless.

■■ ¶ 15 Next, we turn to Appellant's assertions that the trial court erred in concluding that evidence consisting of a letter from Banes to his attorney and estate planner, Banes' discussions with his daughter, and a report from Banes' financial expert were hearsay. We rely upon the comments of the trial court in disposing of these arguments; to-wit:

[Banes] relies on the following evidence [to refute Appellees' motion for summary judgment]:

An unverified twelve page Memorandum which [Banes] may have sent to counsel[—a copy of which was faxed to his estate planner—]describing how he was misled by MetLife; allegations in [Banes'] complaint and amended complaints and [Banes'] answers to interrogatories, portions of the deposition of [Banes'] guardian [Appellant Botkin] describing what [Banes] told her as to what MetLife agents told [Banes] that he was buying.

Pennsylvania Rule of Evidence No. 801(c) defines *hearsay* as a statement "other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted." Hearsay is not admissible except as provided by the Pennsylvania Rules of Evidence, other rules prescribed by the Pennsylvania Supreme Court, or by statute.

The evidence which [Banes] seeks to introduce is hearsay. [Banes] has not referred to [ ... ] any exception that would permit this hearsay to be admitted. See, generally, *Commonwealth of Pennsylvania v. Bujanowski*, 418 Pa.Super. 163, 613 A.2d 1227 (1992), where the Court discussed in detail the reasons that an extrajudicial statement is inadmissible.

In addition, Pennsylvania Rules of Evidence No. 602 provides that a witness may not testify as to a matter unless

---

10. The fact that the trial court makes reference in its memorandum opinion at page 644, n. 3 that, "the answers to interrogatories include a verification signed by Mr. Banes. Each verification states that the verification is based on knowledge, information, and belief (except as to inconsistent allegations)" is no substitute for a complete record being forwarded by Appellant to this Court containing evidence of said verification. *See Smith, supra.* Even if, for the sake of argument, we would overlook this deficiency, the verifica-

tion being based upon Banes' knowledge, information, and belief would not take the answers to interrogatories out of the realm of inadmissible hearsay. *See Treharne*, 426 F.2d at 60. Further, our scrutiny of the record establishes that Interrogatories Nos. 4–6 were answered by Appellant Banes with a verification subject to the penalties of 18 Pa.C.S.A. § 4904. *See* Exhibit "A" attached to Record No. 75. However, this did not fill the void left by Appellant in failing to do the same for answers to Interrogatories Nos. 53 through 109.

evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.

For these reasons, [an order was entered granting Appellees' motion for summary judgment].

Trial court opinion, 11/1/05, at 1–2 (emphasis in original). We agree with the observations of the trial court, and we would add that a motion for summary judgment cannot be supported or defeated by statements that include inadmissible hearsay evidence. *See Isaacson v. Mobile Propane Corp.*, 315 Pa.Super. 42, 461 A.2d 625 (1983).

¶ 16 Herein, for example, the trustworthiness of Banes' declarations would be determined by when he made the statements. The oral deposition of Banes' daughter/Appellant Botkin shows that she was not present during conversations Banes had with MetLife's sales agent/Appellee Sherman. *See* Appellant's Exhibit 1 (Deposition of Appellant Botkin) attached to Appellant's "Response and Brief to [Appellees'] Motions for Summary Judgment," 10/3/05; Record No. 75. Banes' daughter cannot, therefore, substantiate the allegations about whether he was told to purchase whole and universal life insurance, in contrast to annuities and term life insurance, while engaged in conversation with MetLife's sales agent/Appellee Sherman. Pa.R.E. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").[11]

¶ 17 Accordingly, finding no merit to any of Appellant's claims, we affirm the order granting Appellees' motion for summary judgment.

¶ 18 Affirmed.

---

11. We note in passing that Appellant argues that Banes had standing to file a complaint against Appellees. *See* Appellant's brief, at 24. Given the fact that the trial court did not grant the motion for summary judgment because Banes had no standing to institute suit, but entered judgment on a plethora of other factors recited above, we need not delve into the standing issue in light of the other basis for affirming judgment. *See Ball v. Minnick,* 538 Pa. 441, 648 A.2d 1192 (1994) (appellate court may affirm judgment upon reasons other than those relied upon by the trial court); *Smith v. Putter,* 832 A.2d 1094 (Pa.Super.2003) (semble).